UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ROBIN R. GILLILAND,                                    Case No. 6:22-cv-00496-MO

        Plaintiff,                                   OPINION AND ORDER

    v.

LINN COUNTY DEPUTY EASON, LINN
COUNTY DEPUTY LEDERER, LINN
COUNTY DEPUTY NASH, LINN COUNTY
LT. D. RANDALL, LINN COUNTY SHERIFF
MICHELLE DUNCAN,

        Defendants.

_____

MOSMAN, District Judge:

    Plaintiff Robin Gilliland ("Plaintiff"), a *pro se* adult in custody at the Snake River Correctional Institution, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging that he was subjected to excessive force and unconstitutional conditions of confinement. *See* Am. Compl. [ECF 8]. This matter comes before me on Defendants' Motion for Summary Judgment. Defs.' Mot. Summ. J. [ECF 77]. For the reasons that follow, Defendants' motion is GRANTED.

1   - OPINION AND ORDER

## FACTUAL BACKGROUND

The events underlying Plaintiff's claims occurred while he was being held at the Linn County Jail ("Jail") in Albany, Oregon, on post-conviction parole revocation and on new criminal charges. *See* Plaza Decl., Ex. 2 [ECF 78]. Plaintiff's allegations arise from several distinct sets of facts: his transport to Albany General Hospital ("Albany General") on January 16, 2022 (Claim I), his transport to Albany General on January 19, 2022 (Claim II), his transport to Lebanon Community Hospital ("Lebanon Community") and Good Samaritan Regional Medical Center ("Good Samaritan") on January 21, 2022 (Claim III), his conditions of confinement at the Jail between January 16 and 27, 2022 (Claim IV), and his conditions of confinement at the Jail as a result of a protective keep away order from December 28, 2021, through May 4, 2022 (Claim V).

Plaintiff names as Defendants Linn County Sheriff Michelle Duncan, Linn County Deputy Lieutenant Donna Randall, and Linn County Deputies Ray Eason, Eric Lederer and Loren Nash. He alleges that Deputies Eason, Lederer and Nash used excessive force against him during the various transports to hospitals in January 2022, and that Defendants subjected him to unconstitutional conditions of confinement during his incarceration at the Jail.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Anderson*, 477 U.S. at 249.

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

Because Plaintiff is proceeding *pro se*, the Court construes his pleadings liberally and affords him the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, this does not relieve him of his "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. CV 10-5862-GAF (RNB), 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

## DISCUSSION

As an initial matter, while the Amended Complaint refers to the First, Fifth, Eighth, and Fourteenth Amendments, Plaintiff has not stated a claim for relief outside of his Eighth Amendment[1] claims of excessive force and unconstitutional conditions of confinement. A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was "objectively, sufficiently serious;" and (2) that prison officials were deliberately indifferent to his

---

[1] Plaintiff was a convicted prisoner and serving a sentence for revocation of his parole. His claims are therefore governed by the Eighth Amendment, not the Fourteenth Amendment. *See Sandoval v. County of San Diego*, 985 F.3d 657, 667 (2021).

safety in allowing the deprivation to take place. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Additionally, I find that Plaintiff's Response is materially deficient because it was not accompanied by a sworn declaration or affidavit and does not contain a concise statement of material facts not in dispute, as required by Local Rule 56-1. *See generally*, Resp. [ECF 99]. Notwithstanding these deficiencies, I address the merits of the case.

**I.     Plaintiff's Excessive Force Claims**

    **A.     Claim I: Transport to Albany General on January 16, 2022**

        **1.     Factual Background**

In early January 2022, Plaintiff began refusing to eat or drink at the Jail. Am. Compl. at 2; Randall Decl. [ECF 84] at 5. Jail staff became concerned for Plaintiff's health, and he was transported by ambulance to Albany General on January 16. Eason Decl. [ECF 79] at 2. Deputy Eason and two City of Albany firefighters/emergency medical technicians ("EMTs"), Adam Hummer and Jason Katzenstein, rode in the back of the ambulance with Plaintiff. *Id.*; Hummer Decl. [ECF 81] at 2; Katzenstein Decl. [ECF No. 86] at 2.

City of Albany Police Officer Kenneth Fandrem met and stayed at the hospital with Deputy Eason for several hours while Plaintiff was being treated. Fandrem Decl. [ECF 80] at 2. While there, Plaintiff was generally noncompliant and refusing medical treatment. *Id.* at 3; Eason Decl. [ECF 79] at 3; Resp. at 3. For example, while he was restrained, Plaintiff tried to bite off his blood pressure cuff and intravenous line ("IV") in his arm and, when Deputy Eason put his hand on Plaintiff's forehead to prevent him from pulling out his IV, Plaintiff tried to bite Deputy Eason's hand. Eason Decl. [ECF 79] at 3. Plaintiff also attempted to slip free of his restraints, and so Deputy Eason and Officer Fandrem held his arms down. *Id.* Deputy Eason and Officer Fandrem escorted Plaintiff to get a CT scan and Plaintiff was later discharged. *Id.* Officer Fandrem transported

Plaintiff back to the Jail in his patrol car and recorded the transport using his body-worn camera and vehicle recording system. Fandrem Decl. [ECF 80] at 2, Ex. 1, 2.

### 2.    Analysis

Plaintiff alleges that Deputy Eason used excessive force against him during the ambulance ride and at the hospital. Specifically, Plaintiff alleges that during the ambulance ride Deputy Eason "smash[ed]" his head, chest, and face against the gurney, effectively suffocating him. Am. Compl. [ECF 8] at 6. Plaintiff alleges that, at the hospital, Deputy Eason "continued to use [his] hands to suffocate [him]," held him down while medical staff forcefully inserted an IV and catheter without his consent, and threatened to punish him once they returned to the Jail. *Id.* Defendants argue these allegations are completely fabricated and that Deputy Lederer employed the absolute minimum force necessary to overcome Plaintiff's resistance at the hospital. Defs.' Mot. Summ. J. [ECF 77] at 17.

The use of force against an individual in custody constitutes cruel and unusual punishment in violation of the Eighth Amendment if it involves the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). An Eighth Amendment excessive force claim has two elements. First the plaintiff must demonstrate that the defendant used force which "was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Wilson v. Setter*, 501 U.S. 294, 298 (1991)). Second, the plaintiff must demonstrate that the defendant acted with a culpable mental state. *Hudson*, 503 U.S. at 8.

The core judicial inquiry for determining whether prison officials have violated the Eighth Amendment by using excessive physical force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 320–21). To make this determination, a court may evaluate the

5    - OPINION AND ORDER

need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 6–7.

Here, Defendants present evidence from multiple independent witnesses who observed Deputy Eason's interactions with Plaintiff that day. None of these witnesses saw Deputy Eason physically assault, suffocate, sexually assault, forcefully insert a catheter, or otherwise participate in a sexual assault, or threaten Plaintiff with physical violence during the ambulance ride or at the hospital. Hummer Decl. [ECF 81] at 2; Katzenstein Decl. [ECF 86] at 2; Fandrem Decl. [ECF 80] at 2. EMT Katzenstein's contemporaneous report documenting the ambulance transport states that it was "without issue." Katzenstein Decl. [ECF 86-1] Ex. 1, at 1. Notably, Plaintiff did not report any injuries to the EMTs during the ambulance ride, or to Officer Fandrem during the audio- and video-recorded transport back to the Jail. *See* Eason Decl. [ECF 79] at 2; Fandrem Decl. [ECF 80] at 3, Exs. 1, 2.

Plaintiff does not counter Defendants' evidence but, instead, generally reasserts the allegations made in his Amended Complaint.[2] *See* Resp. at 3. However, Plaintiff cannot rest on these allegations alone, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (citing Fed. R. Civ. P. 56(e)). Plaintiff's unsupported conclusory allegations fail to create a genuine issue of material fact as to whether Deputy Eason placed his hands on Plaintiff's head and arms in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 7; *Clement v. Gomez*, 298 F.3d

---

[2] In his Response, Plaintiff appears to raise new claims and make new allegations that were not included in his Amended Complaint. *See* Resp. at 2. As explained *infra* I.C.2.a, to the extent that Plaintiff is attempting to amend his pleadings at summary judgment, he cannot do so.

898, 903–04 (9th Cir. 2002). Even viewed in the light most favorable to Plaintiff, he cannot establish that Deputy Eason's actions were objectively harmful and that he acted with a culpable mental state. Deputy Eason is therefore entitled to summary judgment.

### B.    Claim II: Transport to Albany General on January 19, 2022

In Claim II, Plaintiff alleges that three Linn County John Doe Deputies "forcefully escorted" him to Albany General on January 19, 2022, where an Albany General John Doe Hospital Staff forcefully inserted an IV and pushed fluids through it. Am. Compl. [ECF 8] at 6–7. I previously *sua sponte* dismissed several defendants, including the Albany Police Department, Albany General Hospital Staff, Linn County Sheriff Employees, and Good Samaritan Regional Medical Center Staff, because they were not specifically identified, were not state actors, and/or were not "persons" for purposes of 42 U.S.C. § 1983. Order dated June 28, 2022 [ECF 9] at 2. Although my Order did not explicitly state it, Claim II, alleged solely against three Linn County John Doe Deputies and an Albany General John Doe Hospital Staff, was effectively dismissed.

In his Response, Plaintiff alleges for the first time that Deputy Nash was one of the John Doe Linn County Deputies who transported him to Albany on January 19, 2022. Resp. [ECF 92] at 4. Plaintiff provides no excuse for his delay in identifying Deputy Nash. I note that I granted Plaintiff leave to file a second amended complaint, but he failed to do so. *See* Mot. for Leave [ECF 14]; Order Granting Mot. for Leave [ECF 20]. Plaintiff also sought leave to add parties to this case, but he failed to provide a pleading for my consideration. *See* Mot. to Add Parties [ECF 22]; Order Denying Mot. [ECF 27]. Plaintiff cannot now revive this previously dismissed claim at summary judgment. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

### C.    Claim III: Transport to Lebanon Community and Good Samaritan on January 21, 2022

#### 1.    Factual Background

Plaintiff continued to refuse to eat or drink in the Jail and was transported to the hospital again on January 21, 2022. Am. Compl. [ECF 8] at 7; Lederer Decl. [ECF 82] at 2. Deputy Lederer and his transport partner, Linn County Deputy Nicholas Vinson,[3] took him to Lebanon Community. Lederer Decl. [ECF 82] at 2. The hospital was busy and so Deputy Lederer left Plaintiff in the transport vehicle to go inside to speak with hospital staff. *Id.* When he came back, he waited outside the vehicle and checked on Plaintiff regularly while they waited to be seen. *Id.* After about 30 minutes, a nurse came out to speak with Plaintiff, but he refused to talk with her. *Id.* According to Plaintiff, he had been waiting in the transport vehicle without heat. Am. Compl. [ECF 8] at 7. Because Plaintiff was refusing medical treatment, they returned to the Jail. Lederer Decl. [ECF 82] at 2.

About 30 minutes later, and after obtaining a director's hold authorizing Deputy Lederer to take Plaintiff back to the hospital, Plaintiff was taken to Good Samaritan. *Id.* at 2. Plaintiff claims, again, that the transport vehicle had no heat. Am. Compl. [ECF 8] at 7. They were met in the ambulance bay by a hospital security officer, Staci Schneider. Schneider Decl. [ECF 85] at 1–2. Deputy Lederer was told that an ambulance was coming, and he would need to move the car. Lederer Decl. [ECF 82] at 3. Plaintiff repeatedly refused to get out of the car. *Id.* Deputy Lederer told Plaintiff that he and Deputy Vinson would have to remove him, and they proceeded to slide him across the seat, put their arms under his armpits and lift him out of the car. *Id.* Plaintiff refused to walk, so the deputies carried him into the hospital. *Id.*

---

[3] As further discussed below, Deputy Vinson is not a named defendant in this case.

Plaintiff was initially nonresponsive and refused medical treatment, but eventually began cooperating with medical staff. *Id.*; Resp. [ECF 92] at 5. He spent several hours at the hospital, eating and drinking, and was taken back to the Jail after being discharged the same day. Lederer Decl. [ECF 82] at 3.

### 2.    Analysis

#### a)    Deputies Nash and Vinson

In his Amended Complaint, Plaintiff alleged that Deputies Lederer and Nash transported him to the hospital on January 21, 2022. Am. Compl. [ECF 8] at 7. However, in his deposition, Plaintiff admitted that Deputy Nash did not transport him, but declined to voluntarily dismiss him from the case. *See* Plaza Decl. [ECF 78] Ex. 1, at 6; Resp. [ECF 92] at 1. Indeed, Deputy Nash was not on duty on January 21, 2022. Nash Decl. [ECF 83] Ex. 1.

In his Response, Plaintiff now alleges that Deputies Lederer and Vinson transported him to the hospital on January 21, 2022. Resp. [ECF 92] at 1, 4–5. As noted, Plaintiff has had numerous opportunities to amend his pleadings. He cannot now effectively amend his pleadings to add new claims or defendants through his Response to Defendants' Motion for Summary Judgment. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (a plaintiff "may not effectively amend its Complaint by raising a new theory . . . in its response to a motion for summary judgment"); *accord Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc) ("Raising [a new] claim in a summary judgment motion is insufficient to present the claim to the district court."). Accordingly, I will not consider Plaintiff's claims against Deputy Vinson or add him as a defendant in this case, and Deputy Nash is entitled to summary judgment.

b)    **Deputy Lederer**

Plaintiff alleges Deputy Lederer used excessive force against him at Good Samaritan. Specifically, Plaintiff claims that Deputy Lederer "yanked" him out of the transport vehicle, slammed his head and right shoulder against the door frame, and that dragged him "face down" into the hospital. Am. Compl. [ECF 8] at 7. He alleges that Deputy Lederer ripped his left armpit with his hand. *Id.* Deputy Lederer denies these allegations. Defs.' Mot. Summ. J. [ECF 77] at 17–18.

I set out the Eighth Amendment excessive force law above. Deputy Lederer states that he left the transport vehicle running with the heat on the entire time he waited at Lebanon Community. Lederer Decl. [ECF 82] at 2. He also claims the weather that day was "mild," and neither he nor his transport partner wore coats while they waited outside the vehicle. *Id.* At Good Samaritan, Deputy Lederer says that he "carefully" removed Plaintiff from the transport vehicle and that, due to an old shoulder injury, he had to be "very careful" carrying Plaintiff into the hospital to avoid injuring himself. *Id.* at 2, 4.

Defendants present evidence from Ms. Schneider that confirms this version of events. She watched Deputies Lederer and Vinson "slide [Plaintiff] across the seat of the transport vehicle, taking particular care with his head, and remove him from the transport vehicle." Schneider Decl. [ECF 85] at 2. She also watched them carry Plaintiff into the hospital and asserts that Deputy Lederer did not "'rip' [Plaintiff's] armpit while carrying him." *Id.* Ms. Schneider stayed at Plaintiff's room for the duration of his stay, and saw Deputy Lederer give Plaintiff coffee and heard Plaintiff thank him and apologize for his behavior. *Id.*; *see also* Lederer Decl. [ECF 82] at 3.

In his Response, Plaintiff again reasserts the allegations made in his Amended Complaint,[4] but fails to properly support his conclusory allegations with specific factual evidence sufficient to create a genuine issue of material fact as to whether Deputy Lederer used excessive force removing him from the transport vehicle or carrying him into the hospital. On this record, I cannot conclude that Deputy Lederer's conduct violated the Eighth Amendment.

## II.      Plaintiff's Conditions of Confinement Claims

### A.      Claim IV: General Conditions of Confinement

#### 1.      Factual Background

In January 2022, Plaintiff was moved between intake and the B- and C-cell blocks primarily for medical observation due to his refusal to eat and drink. Randall Decl. [ECF 84] at 4. Plaintiff claims that, between January 16 and 27, he was not given enough hygiene items, shoes, a clean jumpsuit, or his medical mattress. Am. Compl. [ECF 8] at 8; Resp. [ECF 92] at 6. He also claims that he was only given one blanket, went without a shower "for numerous days," that his food sacks were dropped through the tray port, and that cold air constantly blew in his cell. Am. Compl. [ECF 8] at 8; Resp. [ECF 92] at 6. Plaintiff submitted inmate request forms in April 2022, complaining about these conditions and that his cell light was "left on for days at a time." Resp. [ECF 92] at 11–12.

#### 2.      Analysis

Plaintiff alleges that he was subjected to unconsitutional conditions of confinement. Defendants argue that Plaintiff's allegations, even if true, are insufficient to establish an Eighth

---

[4] Plaintiff again raises additional claims and allegations which were not included in his Amended Complaint. *See* Resp. [ECF 92] at 5. As discussed *supra* section I.C.2.a, Plaintiff cannot amend his pleading at summary judgment. Plaintiff also appears to rely on deposition testimony which is either not part of the record or otherwise does not exist. *See* Am. Compl. [ECF 8] at 9; Resp. [ECF 92] at 5.

Amendment claim, and that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. Defs.' Mot. Summ. J. [ECF 77] at 20–21.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. *Farmer*, 511 U.S. at 847. Prison officials must provide "humane conditions of confinement . . . adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (internal quotation marks omitted). Although prison conditions may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency violate the Eighth Amendment. *Id.* at 346.

Here, Plaintiff's allegations suggest that he was subjected to only temporary conditions— that lasted for, at most, eleven days—while he was under medical observation for refusing to eat or drink. Defendants state that, during this time, Plaintiff continued to receive food, clothing, blankets, and amenities typically allowed for inmates, that his cells were adequately heated, and that he was allowed to shower and would have been given clean jumpsuits on laundry days. Randall Decl. [ECF 84] at 5. Defendants state that it is possible that medical personnel requested that the intake cell light stay on longer than usual because Plaintiff was under observation. *Id.* Plaintiff has not alleged sufficient specific facts that the conditions he endured during this time— while he continued to receive shelter, food, clothing and medical care—were so extreme as to violate contemporary standards of decency and rise to the level of a constitutional deprivation. *See Farmer*, 511 U.S. at 834; *Rhodes*, 452 U.S. at 346. As such, he has failed to raise a genuine issue of material fact as to whether he was subjected to a serious deprivation and that Defendants knew

of and were deliberately indifferent to his health and safety. *Farmer*, 511 U.S. at 834. Summary judgment is therefore granted to Defendants.

### B.    Claim V: Protective Keep Away Order

#### 1.    Factual Background

In early 2021, during a previous incarceration at the Jail, Plaintiff met with a detective about a homicide allegedly committed by another inmate, Phillip Gurule. Randall Decl. [ECF 84] at 2. Plaintiff told the detective that he was "a little concerned for his safety if/when Gurule gets discovery and finds out that [Plaintiff] spoke with [the police] about the victim," and asked the detective to "put in a word for him to not have to work in Gurule's block when Gurule gets discovery." *Id.* Ex. 1, at 2. The detective relayed this information to Lieutenant Randall on March 10, 2021. *Id.* Lieutenant Randall subsequently placed a protective keep away order in the Jail system, which prevented Plaintiff from being housed or placed in areas with Mr. Gurule. *Id.* at 2–3.

When Plaintiff returned to the Jail on December 28, 2021, Mr. Gurule was still an inmate there and so the keep away order remained active. *Id.* at 3. In January and February 2022, Plaintiff asked Jail staff several times about the keep away order and whether it could be lifted. *Id.* Lieutenant Randall contacted the District Attorney's Office and was told that the prosecution may still call Plaintiff as a witness in Mr. Gurule's criminal case and was asked to keep the protective order in place. *Id.*

Plaintiff sent multiple inmate requests forms to Jail staff about the keep away order. Resp. [ECF 92] at 9–11, 13–17. In response to these request forms, Jail staff explained that they were unable to lift it. *See id.* On March 2, 2022, Plaintiff's criminal defense attorney emailed the "Linn County Jail Transports" asking that the keep away order be lifted, but Jail staff did not receive it

because that email address is only monitored by Jail transport deputies, not regular Jail staff. Randall Decl. [ECF 84] at 4. The keep away order was ultimately lifted on May 4, 2022, after Plaintiff showed Jail staff a copy of the email and they were able to confirm its validity. *Id.*

###    2.    Analysis

Plaintiff alleges that, due to the protective keep away order in place between December 21, 2021, and May 4, 2022, he was wrongly held in solitary confinement for 23.5 hours a day for approximately 109 days. Am. Compl. [ECF 8] at 9. Defendants contend that the keep away order was in place for Plaintiff's protection and in response to Plaintiff's own concerns, and assert that Plaintiff was never held in solitary confinement. Randall Decl. [ECF 84] at 4–5.

Defendants present evidence that, between December 21, 2021, and May 4, 2022, Plaintiff was moved between intake and the B-, C-, and E-cell blocks, for a variety of reasons including a broken cell block phone, Plaintiff's neck issues, Oregon Health Authority COVID quarantine guidelines, and jail needs, but primarily for medical observation due to Plaintiff's refusal to eat and drink for most of January. *Id.* at 4–5. None of these housing locations were solitary confinement. *Id.* at 5. Beginning around at least February 25, 2022, Plaintiff had all the amenities that a typical inmate would have and received certain privileges, including commissary. *Id.* at 3. Plaintiff spent most of this time in cell block C, a preliminary cell block where inmates stay until they are eligible for a privileged cell block. *Id.* at 4–5. When the protective keep away order was lifted, Plaintiff was moved to a cell in cell block D. *Id.*

Plaintiff does counter Defendants' evidence but, again, generally rests on the allegations made in his Amended Complaint.[5] Resp. [ECF 92] at 7–8. These allegations are insufficient to

---

[5] As explained *supra* section I.C.2.a, to the extent that Plaintiff is attempting to amend his pleadings at summary judgment by raising new claims and allegations in his Response, he cannot do so.

create a genuine issue of material fact as to whether Defendants subjected him to a deprivation resulting in a serious risk to his health and safety and whether they were deliberately indifferent by maintaining the protective keep away order. Rather, the record shows that the keep away order was placed as a direct result of Plaintiff's own personal safety concerns and kept in place to guarantee his safety from another inmate. *Farmer*, 511 U.S. at 833 (recognizing that prison officials are required to take reasonable measures to guarantee the safety of inmates in their custody, including protecting inmates from violence by other inmates). For all these reasons, Defendants are entitled to summary judgment.

## CONCLUSION

For the reasons explained above, Defendants' Motion for Summary Judgment [ECF 77] is GRANTED. Plaintiff's Amended Complaint is dismissed in its entirety with prejudice.

10/16/23
_____
DATE

_____
Michael W. Mosman
United States District Judge